And we'll hear counsel for the appellant, Ms. Affronti. Delighted to see two women. Thank you, Your Honor. May it please the court, my name is Susan Affronti. I represent the appellants, the warden, the commonwealth in this case. I would like to reserve three minutes for rebuttal. Fantastic. The commonwealth, for purposes of our guests, and I won't say any more to you, is the state of Pennsylvania. In this case, I believe there's, it's fairly complicated, as Your Honor said. There's two major areas to be addressed. There is a procedural component to the case, and there's, of course, the substantive claim of ineffectiveness. I would like to begin with the procedural component. In this case, Boyd raised in his habeas petition a claim that was raised on PCRA review. And the Superior Court of Pennsylvania rejected the claim on the basis that it was previously litigated, and therefore unreviewable. The previous litigation bar is a bar that has been reviewed by this court before. And it's very closely akin to the waiver provision that's found in Pennsylvania law, which, again, this court has reviewed and approved of in the past. Under the previous litigation rule, very much like the waiver rule, a claim. Well, let's get to the facts first. The claim is that his counsel was ineffective because the counsel failed to communicate to Boyd a plea offer. Now, there's some question in the record as to whether it was four to eight months. There is absolutely. Or four to 10, and not months, years. Years, yes. Four to eight years. Can you clear that up quickly for us? The offer was expressly four to 10 years. There's no dispute from our perspective that it was four to 10 years. The issue was really never discussed in the state court because of the procedural posture of the case. We attempted to talk about it during the evidentiary hearing, and Boyd's counsel indicated that there was no reason to, and that any issue of remedy should be sent back to the court of common pleas. And am I right that there's no question on the record that he never communicated that plea offer directly to Boyd? There is no dispute.  He called his mother and conveyed it that way. And I also think that it's on the record that he rejected the offer before he even communicated it to the mother. Absolutely. I actually very much disagree with that assertion. I don't believe there was really any indication in the record. I think that was in the record. I know it's not in your brief, but that's kind of a head scratcher for me. I thought it was in the record. Well, I believe that they had an opportunity to ask that question expressly. And each time it was asked during the evidentiary hearing, counsel's response was nothing expressed at all. He said things like, well, I talked to him. I said it was unacceptable. He certainly indicated his disapproval to the prosecutor from the start. He was unhappy with the offer. That is not disputed. However, whether or not he expressly rejected it really is very much not in the record. OK, and it's my understanding of the law, although I don't know. As I usually know, we don't talk to each other in advance about this, that the law is very clear, the constitutional law is very clear that counsel hasn't, from the Supreme Court, that counsel has an obligation to communicate and offer a plea agreement or for directly to. I think in this particular, generally speaking, the ordinary case, I absolutely agree with you on that. Unless the client is incompetent. That would be what the district court held in this case. They felt that since there was no question of competency, and there is not a question of competency here. And there's a decision by Judge Seitz. I think I was actually on the panel in Caruso that says that the failure to inform a defendant of a plea offer, it's Caruso versus Zelinsky, 1982 decision, Chief Judge Seitz writing it, that it's ineffective assistance of counsel for failure to communicate a plea. I just want to get these out of the way, a plea offer. My recollection that Caruso, I don't have her in front of me. I do. But I believe that Caruso, the only question before the court was whether or not there was a constitutional issue on the point. And they sent it back to the district court to review the point, with a suggestion that that could very easily be a problem. And the district court was supposed to review it. But I don't believe that was the holding of the case. I could be mixing the case up. I'm sorry if I am. But you're not arguing that it's not ineffective assistance of counsel to fail to tell a defendant that the Commonwealth offered a plea deal. In this particular case, counsel was very familiar with the family. This is by no means a circumstance where petitioner was abandoned. I do want to make that very clear. You see cases like that on occasion. They are very troubling. That is not this case. This lawyer spoke with petitioner on many occasions. Though petitioner was not incompetent, he found it difficult to communicate with him. He felt, he said this very extensively in the evidentiary hearing. He felt that he could get his legal points across to the petitioner much more effectively if he spoke with his parents. He followed up. He made sure these things were conveyed. He was not leaving him alone or at sea. The Commonwealth offered, let's take your word, 10 years, and they didn't accept it based on advice of counsel, who didn't give him advice. And he ultimately got 8 to 22 years. That's the facts. That's true, yes. What's troubling here is if he, maybe while your adversary is speaking, you can find a record site. What's troubling here is there's a duty to, regardless of who it's to, if it's to his parents, we assume your argument. But if he already rejected it, isn't that trouble? If he already rejected it, I think that's a different situation. It's more severe currently, certainly, than the situation we have here. But he says very clearly the offer was still on the table, which indicates to me that though he, it does seem like he was very clear with our prosecutor that he did not like the deal and he didn't expect that it would be accepted. And he was, I think, severe with his language. I don't think, though, it was a rejection before. If you look at what he talks about, the way he speaks during the evidentiary hearing, he talks about conveying the offer to the mother, conveying the offer as you would to your client. He explained why he thought it was a bad offer. He explained all the reasons and things he hoped to put forth at sentencing, reasons he thought he could do better than what he called a guideline sentence. And that is inconsistent with the idea that he had absolutely rejected it and that it was done. Excuse me. Judge Seitz's opinion states, I'm reading, failure by defense counsel to communicate a plea offer to defendant, the prize defendant of the opportunity to present a plea bargain for the consideration of the state judge and on acceptance by the state judge to enter a guilty plea in exchange for a lesser sentence. A subsequent fair trial does not remedy this deprivation. Seems to me, and also he says, it seems to us that the decision to reject a plea offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective assistance of counsel attaches. The decision to reject a plea bargain offer and plead not guilty is a decision for the accused to make. Now, I don't know how more explicit it has to be. I would like to point out, in addition, this is not a case where they went to trial. This is a case where he did accept a later plea. Well, that's the whole issue. I mean, if he didn't get out. I just wanted to get out of the way that you clearly have, I think, a violation of the Sixth to counsel. And then we have to go on and see whether there was a default. If I may, Your Honor, I do think that there is a significant issue on prejudice here. The court said that it was presumed prejudice because of that difference in sentence, which Your Honor's pointed out. And while that's troubling, I don't think the court was looking at the right point. There is absolutely no law that suggests you should look at the later subsequent sentence. The thing we're assessing here is the voluntary nature of that later plea. If you haven't been told that the Commonwealth offers you a plea deal of four years to 10 years, how can you not be prejudiced? He was told later, Your Honor. And the offer was still on the table. And he made absolutely no effort to pursue that offer. I think that that's an important point. He was perhaps not told initially. But counsel says expressly that he did discuss it. Is the offer still on the table? Can Mr. Boyd now, are you willing to put that offer on the table now? Once we have proceeded to trial and a determination was made by a sentencing judge, no, absolutely not. To the moment that matter went to Judge Glazer on the open plea, absolutely that four to 10 was open. Was there anything to prevent him from showing up at the open plea and saying, I want that deal that I heard about late? I should have heard about it a long time ago. I just heard about it recently. I want that deal. Was there anything to prevent him or his counsel from seeking that? There was nothing. And there is on the record five occasions where he was in court with counsel and made absolutely no effort to talk about it. There is the express notation by counsel that he did talk with him about it in person. There is the express admission by Boyd that his mother did convey the plea offer and that everything was conveyed to him properly by his mother through the translator that counsel felt was important. So you have both here. Is your prejudice argument, in a nutshell, in the circumstances here where there was difficulty in communication, there was total reliance on the attorney, and there were family friends that if the lawyer, I'm just saying, is this your argument, that with a lawyer's strong recommendation was definitely going to be accepted by this particular client? I believe that was the position the magistrate judge took. And I think that that is certain. Justice Harris has asked you if that's your position. Our position is that, yes, that is one argument. That is one point. The other point, which I think is important, is it goes to the voluntary nature of the subsequent plea, the later plea. And the later plea, Perry v. Rosemeyer, this court's case, indicates that you need to say, you need to come forth with some evidence other than your own statement that you would have accepted. You take all the facts that Judge Chigars mentioned, which I think are all very important, compare them to the guidelines. Compare them to what he was facing. And in the words of counsel, this was purely a guidelines offer made by the Commonwealth. Counsel felt he could do better, and the petitioner was completely reliant on counsel. He would have done. And the magistrate judge, if I may, I know we're at the end here, the magistrate judge expressly found that his statement that he would have accepted the other plea offer. The district court disagreed, right? Yes, but there was a fighting of fact based on credibility determination in the evidentiary hearing. The fact that the district court is the one we looked to, not the magistrate judge. Yes, but it's our position, Your Honor, that the district court could not overrule the credibility determination after an evidentiary hearing. Hill v. Byer, I believe, is the case. Why don't you go to the real issue? I know we've taken you off your issues. We have real issues of procedural default. Absolutely. Basically, we have a situation where on direct appeal, there was a claim of ineffective assistance of trial counsel. And then on PCRM, with a new spin, a new legal spin, and new facts, they again raise a claim of ineffective assistance of trial counsel. They do not raise a claim, or the claim that is here is not the claim of ineffective assistance of appellate counsel. That's a different circumstance than what we have. Under the previous litigation bar in state court, you can't raise the same legal issue with new facts and new legal spin in a subsequent collateral proceeding. Is the previous litigation bar in state court the same as a procedural rule, such as you have to file within a certain amount of days? Absolutely. Because, well, you could argue that the previous litigation defense is for the state. In other words, the state doesn't want to have to do the same thing twice. But that query, if that's the same as we had in Merritt v. Blaine, for example, where there was a failure to follow a procedural rule of the state, like a time bar, and that the federal habeas court wouldn't be barred by the state deciding that it was previously litigated. Not to mean that they could say it wasn't procedurally litigated, but to mean that that isn't a rule that would prevent the habeas court from proceeding. Blame me, that's what the district court did below. Was that part of it wrong? Yes, absolutely. Why? Below talks about what a procedural rule is. And it indicates that it prescribes the methods of enforcing rights. The previous litigation bar is exactly that. It prescribes how you are supposed to raise your claims. You're supposed to raise them in the first instance. All of the factual representations, all the alternate legal theories, all the alternate factual representations. You can subsequently raise a claim of appellate counsel was ineffective for raising it this way. The better way to raise it was this way. But that's why it's a procedural rule, because it is about method. It is about way of presentation, means of presentation. We haven't ruled on this really squarely yet, have we? I believe that in Wagner, you talked about the idea of waiver. I think it's been assumed. I think that's a closer case. Even in the narrow case that your adversary pointed out to us, I think it's assumed. But I don't think we've ever. You're correct. It's often, not often, but it has been discussed in dicta. It has been discussed in Wagner. It has been discussed in CIS drug. I think that's it. But yes, it's been dicta. What happens if it's procedurally defaulted? That's the end? No, actually, we would argue basically, I believe, along the lines Judge Sloan was just speaking, if it is not a procedural rule, it must be something. It must have some value. And in that situation, we would argue that if it's deemed not a procedural rule, then we would argue it must be a substantive rule. If it is a substantive rule, then AEDPA must apply here. The district court found that they had the best of both worlds, that there was not a procedural rule, and it was de novo review. We would argue that if this court were to say it's not procedural, which we believe it is, but if this court were to say it's not, that it must then be substantive. And if it is, we get AEDPA.  Then it's the AEDPA standard of review, which says that the superior court's opinion must be upheld unless they can demonstrate it's an objectively unreasonable application of United States Supreme Court precedent. I think that's important. The district court thought that the state superior court was clearly erroneous in saying that it had been waived, because, in fact, it had been raised. Isn't that right? Didn't the district court say, went into the state and said, I think you're wrong? I think the state superior court is wrong. I believe they did that. I may be getting the district court confused with the opinions that they relied upon. They speak about, or the other opinions, I don't think this was the district court, speaks about the state court misapplying the previous litigation bar. Is that what you're speaking about? Maybe. And they indicate that the previous litigation bar only applies when the exact same facts, same theory, same issue are raised. But he did raise ineffectiveness in one way or the other. It doesn't have to be exactly on all fours. The factual representations were entirely contrary, because they said in the direct appeal, I think that's important. The procedural default rule indicates that you must raise both your legal theory and your factual representations to the state court in a way that they can review them. And in the direct appeal, what they said was, I believe the statement in the brief is something that they could have it. They may have been a little different around the edges, but wasn't the essence and his client's affidavit essentially that I didn't get notice of what the prosecutor was offering me? I would say absolutely not. There's an express statement. The district court doesn't agree with you. No, they don't. There was an express statement in the direct appeal brief to the Superior Court that says, trial counsel represented to me, and I now represent to this court, that he advised Boyd, and that Boyd was given the opportunity to decide, make the ultimate determination on the plea. I believe that's the quote. I can get that when I sit back down. But that representation was made that's very different than what was raised in the PCOA court. Why don't we hear from your colleague on the other side, and we'll get you back. Thank you, Your Honor. Thank you. Just for further, actually, no, no, no, no, no, no. For our Russian friends, just so there's no confusion, the attorney that's standing up now is not the attorney we're talking about, in terms of the effectiveness of counsel. Ms. Sturm is well known to this court. She's a very good attorney. We always enjoy hearing from her. Thank you, Your Honor. May it please the court, I'm Cheryl Sturm for the appellee, Christopher Boyd. To answer first, if I might, some of the factual questions that Your Honor was asking. In the appendix prepared by appellant at page 35, I asked Mr. Sciola, during the conversation, the defense counsel who represented Mr. Boyd during the plea negotiation stage. During the conversation you had with Mrs. Boyd, this is when the plea offer was conveyed to Mrs. Boyd, did you at any time indicate you had rejected the offer as unacceptable? And the answer is, well, I did. And he goes on to explain that. OK. So that's when he admits that he rejected it before he talked to her. Your Honor, and I made sure that this was his admission. On page 40, I said, well, first of all, at the time you made the conversation to Nancy Boyd to communicate that there had been an offer of four to eight years, had you already rejected the offer? I had. I don't see that at 40. I see it. Page 40, line 5. OK, thanks. Your Honor, I think that certainly this is not just a matter of failing to communicate the offer. But in this instance, counsel had rejected the offer before communicating it to Mr. Boyd. As to whether the offer was four to eight years, Mr. Skeel had testified at the hearing that in his recollection, the offer was four to eight years. At the very time of direct appeal, attached to the appellate brief was a declaration, an affidavit from Mr. Boyd, from Christopher Boyd, stating that the offer was four to eight years. And Your Honor. Don't we have to get a finding by the district court under those circumstances? I mean, assuming that it's relevant, ultimately. On one side, we hear four to 10. And on one side, we hear four to eight. And two years is two years in jail. And that's a big difference. He's already served. How much has he served? I believe he's served more than six years, Your Honor. Yes, more than six years. So I don't know how we can decide, as an appellate court, whether it was four to eight to four to 10. So if it's relevant, we've got to send that part back, at least. Your Honor, I would point out, I don't know if this would be of assistance to the court, or the court would still want further clarification from the district court. But the Commonwealth filed a motion to stay the court's order, pending the outcome of the appeal. And we denied it. When the district court denied it, Chelsea made a finding that the Commonwealth appeared to have abandoned the claim that it was four to eight years. Really? Yes. That's the last order that was entered. District court order? Yes, it was denying the Commonwealth's motion to stay the order, to make the offer to Mr. Boyd. And so the district court said it was four to eight, or four to 10? Four to eight. OK, we'll check that. Your Honor, although the Commonwealth has made a great deal of the fact that Mr. Boyd appeared with his attorney in court on other occasions, we have to look at everything Mr. Skeel admitted to in his testimony at the hearing. He said he never discussed the Pennsylvania sentencing guidelines with this defendant. He never explained the aggravating circumstances that were available under this Pennsylvania sentencing guidelines. He never consulted at all with this client about the merits of the plea. And so under those circumstances, to just say, well, she's not going to do it. That's at the time of the original plea offer, right? Because during the plea colloquy, he did admit that he'd done all that, right? Right, throughout any, he said he never, he said his testimony at the hearing was he never discussed the sentencing guidelines with Christopher Boyd. He never discussed the sentencing guidelines with Christopher Boyd without equivocation. What about the prejudice issue that Ms. Affronti raises with us? Well, Your Honor, I think that the district court did properly look at the same issues that were also looked at in Caruso back in 1982. And that was to look at the difference between the sentence that could have been had under the plea agreement and the sentence that was actually imposed. And in looking for objective evidence beyond the defendant's self-serving statement as to whether he would have accepted the offer. And I think under those circumstances, the difference between eight to 22 years versus four to eight years was very substantial. And I think the court properly factored that in. Also, the magistrate judge failed to employ the reasonable probability standard as to whether or not Mr. Boyd would have taken this offer. He doesn't discuss the reasonable probability standard. And he never discusses the Borea, the Gordon, the Caruso explanation of, well, what do you, of course, every defendant is going to say he would have taken the plea. What else can we be looking for? And that is continuously going back to 1982 in this court. It found to be substantial evidence of the prejudice. So I think that we should assume prejudice, or we should accept the district court's finding of prejudice? I mean, how should we handle the prejudice issue, according to you? Let's assume that you have a constitutional violation or the failure to advise him of the plea offer. What do we do on the prejudice issue? How should we handle that? Well, Your Honor, I think the district court judge did make a finding of prejudice when she goes into the discussion of these other cases that I'm talking about. She makes a legal finding of prejudice, right? She doesn't have evidence before her. Well, she has the testimony of Christopher Boyd from the evidentiary hearing that he would have accepted the offer. She has the difference in the other cases. Everybody will say, I would have accepted the offer. And in fact, in one of the cases we cited, Masked versus McGinnis, Judge Chin from the Second Circuit said, we're having a hearing, but we're not even putting the defendant on the stand, because he's always going to say, I would have taken the offer. I'm not going to put the prosecutor on the stand, because I already know what the prosecutor is going to say. We're going to just hear from defense counsel. And in Masked versus McGinnis, without hearing a word of testimony from the defendant, the district court found prejudice based on the same sort of statements that are made here. But if after the open plea, he received a sentence that was more favorable than the deal that was offered to him initially, then he probably would have been happy with that. Well, he wouldn't have had no prejudice either, Your Honor. Well, what prevented him, what confuses me in this case, if we assume a constitutional violation, and your client went to trial, let's say the constitutional violation occurred, and let's say that the deal was taken off the table, and your client went to trial, was convicted, and got a harsh sentence, then you win. What I'm confused by is, what was to prevent your client, from rather than entering the open plea, from just taking the deal? Counsel has represented that that deal was available. So even if there was a violation, why didn't his voluntary subsequent conduct at the open plea hearing vitiate any prior problem that preceded it? Because he never had any effective assistance of counsel in connection with the plea bargaining stage. Once Mr. Sciola takes the witness stand and says, I never discussed these Pennsylvania sentencing guidelines with this defendant, this defendant had no clue. Didn't the judge go through that with him in the colloquy? But at this point. It seemed that the judge laid it out very carefully as to what might happen to him in the course of the open plea hearing. But now the defendant is making a choice between the four to eight years for the open plea. The defendant has no idea that the four to eight years is still open to him. There's no indication that he knows the four to eight years is still open to him. He's told, his attorney has conveyed to him through his mother, the plea has been rejected. Not that it's still open. I have rejected this plea offer. So his choice wasn't between going back to the old deal, the open plea or trial. His choice at that point was trial or open plea. He never went to trial. OK. That was a statement by the common law. No, I never gave him the choice. I'm saying his choice. That's why I said his choice was between either going to trial or the open plea. As it was presented to him by his attorney. And he had no, at the time he might have made an alternate choice, the attorney is telling him nothing about greater exposure that he'd face if he doesn't take the four to eight years. Is this a good deal? What do you need to know about the sentencing guidelines? What do you need to know about the aggravating circumstances under the sentencing guidelines? The defense counsel says, I never told him they could get anything like 22 years. I didn't think he could get anything like 22 years. I never told him that. And when I asked Mr. Sciola what information the defendant had when he was participating or making any decisions at all, Mr. Sciola's testimony was, I don't think he participated in the decision making at all. I don't think we can describe him as participating in the decision making at all in this case. He says on 846, and he says, I'm not even, we're talking about the decision making process and Mr. Sciola says, I'm not even sure he did participate in that. There's a very complicated, I'm not sure it's really for oral argument, issue on the procedural rule, previous litigation, et cetera. I want to pass that for the moment and ask you about the remedy. The remedy the district court ordered was for the Commonwealth to offer the prior deal. Isn't that something that should go back to the state court for the state to decide what the remedy should be if we were to find a constitutional violation? Well, for instance, your Honor, Goria versus King, which is the case from the Second Circuit, 1999, that third citation, this is a state case and that was the remedy that was granted by the federal judge was to put the defendant, that is the remedy, that's the standard remedy for ineffective assistance of counsel. What other remedy would there be except to put the defendant back in the position he would have occupied had counsel been effective? But isn't the district court remedy, in a sense, taking away from the state trial court the opportunity to make this appropriate sentence at this point? Your Honor, what? I don't think these. It seems to me, at least the Commonwealth argues, that it's an interference. Yeah, are we overstepping our bounds by directing them to do that? Your Honor, that has traditionally been all the cases that I've cited. Paters, Cullen, Beria versus King, I think Mask versus McGinnis. Everyone has remedied an ineffective assistance of counsel claim where you can objectively see what the remedy is by putting the defendant back in the position he would have occupied. Now, what the position is is the offer of the four to eight years. Mr. Boyd would accept the offer of four to eight years. The trial judge would then, we presume, have the opportunity to say, I'm going to do four to eight years. I'm not going to do four to eight years. Mr. Boyd would have the opportunity to say, I guess this time we're going to have a trial then. So I don't think by selecting this remedy, that this has overstepped the bounds of the district court, the district, I'm sorry, the state court. The state court is still very much in play. In other words, I didn't think of that. Your position is that that would be in state court, and the state judge could disregard the plea offer, the plea agreement. And does it work in the state like it works in the federal, which is that the state judge can just decide what would be an appropriate sentence? Well, even if there was a plea agreement, I mean, if the state said, OK, we offer four to eight or four to 10, I'm still not sure. We offer four to eight, and Mr. Boyd says, yes, I'll take it. It's more than eight to 22. And they go before the state judge. Does the state judge have an obligation to follow the plea agreement? I think the state judge could reject the agreement, but Mr. Boyd would then have the right, sort of like a stipulated agreement, to withdraw the agreement and say, OK, let's go to trial. It's pretty hard on the state, which doesn't have any witnesses left, but maybe they do. Mr. Jones is still alive, right? He's in a wheelchair. We don't know for sure that he's in a wheelchair, but yes, Mr. Jones is still alive. Well, the briefs say he's now in a wheelchair. I've read that. I'm not sure what his current status is. He was hit pretty hard. Yes. No, there was a stipulation that the injuries were serious. However, knowing everything about that case, the Commonwealth made the offer of four to eight years. Knowing every single item about the facts of this assault, they made the offer of four to eight years, or four to 10 years. We say it's four to eight years, but they certainly did not make an offer of eight to 22 years, which is what the defendant is serving. Your Honor, I think the procedural issues really are not difficult. What the Commonwealth is failing to acknowledge to this court is the defense counsel may have made those arguments on direct appeal, but Mr. Boyd's affidavit that was attached to the direct appeal, by the way, the Commonwealth has only included half of the affidavit in its appendix. It put that court on notice that his attorney never conveyed the offer directly to him. That court has been on notice from the beginning. If we had skipped the PCRA and gone directly to federal court and raised the claim that defense counsel was ineffective for failing to convey the offer, the Commonwealth would have said it's a different issue. When we raised it in the PCRA court, they said it was the same issue. And so there was a catch-22 situation. We felt we had to go back to the PCRA, present this, and just very briefly. Go ahead. Go ahead, Mr. We asked you a lot of questions. OK. Go ahead. All right. Very briefly, Your Honor, to just go over what happened here, on direct appeal, Mr. Quinn raised the issue that Mr. Boyd didn't get the benefit of professional advice, and he was not advised about the guidelines. The state court converted this into the issue that the plea that he entered, the open plea, was knowing, voluntary, and intelligent. They didn't even address Mr. Quinn's issue. Mr. Quinn asked for a remand attaching Mr. Boyd's affidavit to flesh out the ineffective assistance of counsel claim. Commonwealth opposed the remand and obfuscated that opportunity to flesh out the issue. We filed the PCRA, said it was a different issue. They filed an answer saying it was the same issue, no hearing necessary. They convinced the district court judge it was the same issue. They convinced the Superior Court it was the same issue. Not the district court judge, you mean the trial judge. The trial judge. The PCRA judge, the trial judge, the Superior Court, it was the same issue. When we filed the 2254, they said it was a different issue. Can you address the legal issue? I mean, is the previously litigated, is that procedural? I mean, it seems to me, you know, even, and I mentioned this to your adversary, you can give us the narrow case, thank you. But I mean, this seems to assume it's procedural. Wagner, as well. I mean, what do we do with that? But your honor, he's never waived it. If anything, he presented it twice. There's certainly no waiver if it's the same issue. He presented it in the direct appeal. If it's a different issue, he presented an ineffective assistance of counsel claim in a PCRA where the court refused to reach the merits. And it certainly was a distinct issue. Mr. Quinn testified over the summer. But what we have is a holding that it's been previously litigated. Yeah, we have to apply the ADPA standard. And the question is, I mean, we're met with applying the ADPA standard to the state determination that Boyd had procedurally defaulted by trying to litigate the same claim twice, or really by waiving that part of the claim that the lawyer didn't communicate the offer to him. Now, can we get by that by saying this is an exception to the deference required under ADPA because the state superior court was clearly erroneous? In other words, it made its decision on the basis of facts that are not supported in the record, i.e. that it's a different claim. Well, yes, it is a different claim. And so we wouldn't have to apply the deference standard if the superior court was clearly erroneous. Correct, and Mr. Boyd consistently in his submissions presented the same claim. And that would let us go to the merits of the underlying constitutional issue. Correct, Your Honor. Do you have a statement? Tom, do you have a note of clarification? It's nice to see you. I see you all the time on your briefs. Oh, thank you, Your Honor. I don't think I've ever seen you argue a case in all these years. Oh, well, it was nice to be here, Your Honor. Thank you. Thanks. I know you've argued before Judge Becker, but I don't think you've ever argued. In 28 years, I don't remember you ever arguing before me. Now I know what you look like. Thank you. Thank you. Well, I guess we ought to go first to this part that Ms. Stern pointed us to the record in which it seems pretty clear that counsel admitted that he had not communicated the offer I mean, that's a pretty basic. You're rejecting it. I actually would like you to read the rest of counsel's statement, which was, I had pretty much told the district attorney that I thought that was, you know, way over the top. It wasn't as if the offer was withdrawn. Yeah, but that's, but Ms. Stern points us, he said I had, that there had been an offer of four to eight years. Had you already rejected the offer? Answer, I had. Oh, yes, yes. But, and he says, I had, but he continues. Again, I said earlier, this isn't perfectly clear at all. I think he very sternly said to the prosecutor, I think this is a terrible offer. I have no dispute that he most clearly expressed his displeasure. But two things are very clear from the complete answer given by counsel, which is, I had pretty much told the district attorney that I thought it was a bad offer. I had pretty much told the district attorney, it's not a rejection at all. It is a firm statement that you don't like it in an attempt to negotiate a better offer, which he did later do. Your adversary claims that her client had no idea that the initial offer was available at the time he entered the open plea. Could you address that, please? Again, that is clearly refuted in the record. This is clearly refuted in the record. On A38 of the record, during the- A38? A38, it's page- Of the appendix? Of the appendix, yes. It's page 10 of the evidentiary hearing, if that helps more. Towards the bottom of the page, counsel says, there were moments when I sat with Chris and I did repeat the offer to him, but that would have been after. Way after the fact. Right, but way after the fact, but most certainly, as to Judge Hardiman's question- And after I had basically informed the boys, i.e. the parents, that I thought we could do better. Right, I think after is referring to the initial offer or after the open plea? Before the open plea. It seems to be very clearly in that time period, from when the initial offer is made, they have rejected it, and then we have a span of time that occurs before the open plea. I think it's about seven months. I think he told- And he clearly discusses it with them, which tells me that Boyd absolutely knew that was an offer, as Judge- I probably should have asked supposing counsel is, but why wouldn't he have taken the initial offer? Why did he go forward with the open plea? Because he was hoping for leniency or- Absolutely. He's very clear in that we provided the sentencing and the guilty plea statements that were made by counsel. He very adamantly arguing that he believed petitioner should be given a very short sentence, perhaps in the long tail, and- I'll have to look at the disk. Listen to the disk, which we, as you know, we can do. But I thought you said that in the court, during the sentencing, it was made clear that the offer was still open. And Ms. Sturm said that didn't happen. Can you help us with that? No, no, my point was that in the plea colloquy, as I recall the record, in the plea colloquy, it was similar to what I did on the district court. You go through in quite a bit of detail what's happening and to make sure that the plea is knowing and voluntary. That includes explaining to the person before the plea is finalized, what the potential sanctions are if the person goes forward with the plea. Yes, absolutely. And it was, I believe it was five times that he was advised the possible sentences during the colloquy. And during that time, did the court ever say to him that it's still open? No, no. Your answer on the disk is no. Is no, absolutely. I don't think the court knew about the original offer. However, my answer is that Boyd did because counsel expressly says that he talked with him after. Can you point us to the record where counsel said that he told his client? A38, in the appendix, A38, towards the bottom of the page. Oh, it's the same citation you gave us. That's right, it's the same one. Okay, all right. Yeah. Okay. All right, thank you. Yeah, of course, you're welcome. The procedural default issue. Yes. If we find, if we accept your argument, is the case over? Absolutely. That's it, if the claim is defaulted, unless, they have made no showing of cause and prejudice. Cause and prejudice can overcome a procedural default. Well, ineffective assistance of counsel is cause, and prejudice can be assumed if you accept, if you get a, at least according to the Second Circuit, if you get an eight to 22, as distinguished from a four to eight. If I may also just address that one point. Sure. The Second Circuit did not say, you should compare the subsequent sentence received. The Second Circuit said, you should compare the offered sentence. This is in both Mask and Gordon. You should compare the offered sentence to the guidelines, and that you use that as a way to determine if the plaintiff's self-serving statement that he would have accepted the plate is credible, because you can determine if a plaintiff, you know, he's given something much below, I'm sorry, much below the guidelines, and it makes sense that if it had been advised properly, he would have taken it. In this case, as I said, it's a guideline sentence. So it's a very different analysis than what they saw in Mask and what they saw in Gordon. Thank you very much. Thank you. We'll take the next case. You ready to take it? U.S. v. Schwartz. I see Mr. Zassner's here. Are you going to argue it? Yes, ma'am. Oh, wow. You're not just watching one of your assistant? I have to participate occasionally. Yeah, occasionally. You did last time with me. Get paid. You did it last time I was here, too, so I'm getting a little bit of a complex. This is one of the few cases we've had today without the incompetence of counsel. We're happy to have him. I hope not, because I was the counsel below. Oh, yeah, it's been quite a day. All right.